CURTAIN SUPPLY CO. v. KEELER.

(Circuit Court of Appeals, Second Circuit. April 19, 1905.)

No. 178.

PATENTS—INFRINGEMENT—SHADE-HOLDING DEVICE.

The Forsyth patent, No. 559,446, for a shade-holding device, claims 3 and 4, construed, and *held* valid, but not infringed by a device in which the head or contact part is made throughout of one material.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 131 Fed. 871.

This cause comes here on appeal from a decree of the United States Circuit Court for the Southern District of New York dismissing the bill alleging infringement of complainant's patent No. 559,446, granted May 5, 1896, to Henry H. Forsyth and Henry H. Forsyth, Jr., for a shade-holding device.

Charles C. Linthicum, for appellant.

F. S. Duncan, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The patent in suit relates to the class of devices employed on railway cars for holding sliding window shades in the position of adjustment. The prior art provided fixtures which were capable of adjustment by means of friction tips which were usually short and spring-pressed outwardly against the sides of grooves in the window frame. The patentees say as follows:

"The principal difficulty to be overcome in the use of these devices is their tendency to frequent displacement and the liability of the friction ends to

come out of the grooves owing to the manipulation of the shade by grasping its lower edge by the hand and forcing it up or drawing it down without withdrawing the locking-rods against the action of their outwardly-forcing springs. Should the bottom of the curtain be merely displaced and the ends of the fixtures remain in the grooves, the shade will retain its angular position with the older types of tips.

"It is one of the chief objects of this invention to construct a shade-holding mechanism which will not only firmly hold the shade against the action of the spring shade roller, but which will also be self-righting or capable of returning to its proper position when moved therefrom by grasping the end of the shade either in raising or lowering.

"Another object of this invention is to render possible the use of a leather frictional holding shoe without employing an excessive spring-pressure."

These objects were accomplished by means of a tip holder of considerable length, provided with a plurality of bearing points adjacent to the curtain rod, the ends of said tip holder extending beyond said bearing surfaces and serving to permit the bottom of the shade to automatically right itself when forced into an angular position. The means devised to provide this capacity for self-righting involved invention, and the patented construction is a marked improvement upon those of the prior art and is of great utility. That the patent in suit did not first describe a self-righting fixture is shown by the Bailey patent of 1894, which, however, was for a fixture balanced by a weight, and was not practicably operative. Defendant's fixture is mechanically within the terms of claims 3 and 4, the ones in suit, because it has "heads whose outer faces extend at right angles to the lower margin of the shade, friction tips carried by the heads and normally projecting beyond the plane of the edges thereof, and said heads having bearing points above and below the tips, and on which the fixture may rock when force is applied to the shade near one side thereof," of claim 3; and the "plurality of friction tips * * * providing separated bearings," etc., of claim 4. If the statement in the specification that "the tips may be made of some other material than leather—e. g., a harder substance, which would have of itself less frictional power and a heavier spring pressure"—be applicable to the construction shown in Figs. 2 and 4 of the patent, the claims in suit might be so construed as to cover defendant's heads. This will more clearly appear by considering the friction tips in Fig. 4 vertically extended to the extreme limit of the head, the result of which is a device identical with that used by defendant. The construction quoted above, however, is only suggested in connection with the use of anti-friction rollers. The patentees, after fully describing the general features of their invention, say, in a separate paragraph, as follows:

"In some cases * * * it may be found expedient to journal anti-friction rollers in the extended ends of the tip-holders. * * * When these rollers are employed, the friction of the extended ends upon the walls of the groove when the shade is tilted into an abnormal position is reduced to a minimum and the shade will right itself, even though the spring pressure be excessive, owing to carelessness or unskillfulness in construction."

Then follows the statement first quoted. That the use of a harder material than leather is only contemplated when rollers are used

is clear from the concluding sentence of the foregoing paragraph, which is as follows:

"Thus the provision of the anti-friction rollers permits a wider range of selection of material and compensates for carelessness or lack of skill in construction."

The whole patent is predicated upon the accomplishment of "the feature of self-righting, which forms the important part of our invention"—a construction in which there is the antithesis between one set of friction tips normally in contact with the bottom of the grooves and another set of nonfrictional bearing points normally out of contact. Thus "the metal surfaces" of these latter points are described as "having small frictional holding power," the tips as "friction tips of leather," and the two are contrasted thus: "The metal has very slight frictional power as compared with the leather." And complainant's expert says:

"The instructions all through the patent are undoubtedly that by selecting a good frictional material for the holding tips and good anti-frictional material for the rocking extensions, good and satisfactory results are reached."

It is clear, therefore, as stated by defendant's expert, that "this difference in the frictional holding power of the two sets of contacts is the mechanical basis and essence of the invention of the patent in suit."

That the patentees did not conceive of or disclose a head formed out of solid projections of the same metal is further indicated by the provision in claim 4 that the tips shall be "mounted in said heads," and by the fact that every friction tip described or illustrated in the patent is stated or shown as made of separate pieces of leather or rubber inserted in the head. We conclude, therefore, that the defendant's fixture, comprising a head constructed throughout of one material, does not infringe the claims in suit.

The decree is affirmed, with costs.